**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**


IN RE:                               :

      **THOMAS M. JOHNSON, III,**         :       **CASE NO. 1-10-bk-01151-RNO**

                                 :

      **Debtor-in-Possession**            :       **CHAPTER 11**

**FOURTH AMENDMENT TO DISCLOSURE STATEMENT REGARDING**
**DEBTOR'S PLAN OF REORGANIZATION UNDER**
**CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**


Craig A. Diehl, Esquire
Law Offices of Craig A. Diehl
3464 Trindle Road
Camp Hill, PA  17011
(717) 763-7613

Attorney for Thomas M. Johnson, III
Debtor-in-Possession


Dated:  October 27, 2011

# TABLE OF CONTENTS

**ARTICLE I**
    **Introduction**…………………………………………….. …………………………… 1
    A.    Purpose of Disclosure Statement……………………………………………… 1
    B.    Representations Limited…....………………………………………………… 2
    C.    Voting Provisions……………….…………………………………………… 3
        1.    General……………………………………………........................ 3
        2.    Claimants Not Entitled to Vote; Administrative Claims………………......... 3
        3.    Claimants and Interest Holders Not Entitled to Vote: Impaired Claims.......... 4
        4.    Acceptance of the Plan……………………………………………………… 4
        5.    Confirmation Without Acceptance by All Impaired Classes…………….….... 5

**ARTICLE II**
    **History of the Debtor**…………………………………………………..……. 6
    A.    Pre-Filing Operations and History………………………………………….... 6
    B.    The Chapter 11 Filing and Post-Petition Events…………………….…………… 7

**ARTICLE III**
    **Summary of the Plan of Reorganization**…………………………………….…... 8
    A.    General Outline of the Plan……………………………………………………8
    B.    Treatment of Administrative Expenses…….………………………………… 9
    C.    Treatment of Tax Claims…………………………………………….………… 10
    D.    Classes of Creditors and Interests and Their Treatment Under the Plan………..… 10
        1.    Class 1 – Association of Apartment Owners of Ala Moana Hotel
                Condominium………………………………………………….……… 12
        2    Class 2 – Bank of America……………..………………………………….... 12
        3.    Class 3 – Bank of America………………………….…………………….... 13
        4.    Class 4 – Chase Home Finance, LLC……………………………………… 13
        5.    Class 5 – Green Planet Servicing, LLC……………………………………… 14
        6.    Class 6 – Aurora Loan Services, LLC…….…………………………………… 14
        7.    Class 7 – EMC Mortgage Corp………………………………………………14
        8.    Class 8 – Central Pacific Bank………….…………………………………… 15
        9.    Class 9 – Association of Apartment Owners of Waipouli Beach Resort……. 15
        10.    Class 10 – BB&T……………….……….........................……………………15
        11.    Class 11 – BB&T……………….……….........................……………………15
        12.    Class 12 – Mortgage Capital Group, LLC……………..…………………………15
        13.    Class 13 – Michael H. Nekoba and Daryle S.H. Nekoba…………….…........... 16
        14.    Class 14 – Old Republic National Title Insurance Company……………….…... 16
        15.    Class 15 – Unsecured Creditors…….…………….…………………………… 16
        16.    Class 16 – Debtors Interests……………….……………………………………… 16

**ARTICLE IV**
    **Means for Execution of the Plan**...................................................................................16

**ARTICLE V**
    **Liquidation Analysis**……………..........................................................................17
      A.    Effective Chapter 7 Liquidation........................................................17
      B.    Liquidation of Assets…………………………………...…………………17

**ARTICLE VI**
    **Acceptance and Confirmation of the Plan**...................................................18

**ARTICLE VII**
    **Miscellaneous Provisions of the Plan**.......................................................19
      A.    Property of the Estate……………………………..............................19
      B.    Retention, Enforcement and Waiver of Claims...............................19
      C.    Objections to Claims and Interests.................................................20
      D.    Executory Contracts and Unexpired Leases…….............................20
      E.    Modification of the Plan……………………………………………… 20
      F.    Retention of Jurisdiction………………………………………………21
      G.    Rules of Construction, Notice, and Governing Law…………………………… 21
      H.    U.S. Trustee Fees………………………………………………………21
      I.    Legal Proceedings……………………………………………………22
      J.    Discharge of the Debtor………………………………………………..... 22
      K.    Distribution Agent……………………………………………………. 22
      L.    Transmittal of Distributed Property………………………....………………....23

**ARTICLE VIII**
    **Conclusion**……………………......…………………………………...………………… 23

**Exhibit 1 – Liquidation Analysis/Cash Flow Projections**

**Real Estate Cash Flow Projections**

**Exhibit A – Certified Appraisal of 1177 Queen St., Apt. 3705, Honolulu, HI  96814**

**Exhibit B – Certified Appraisal of 520 Lunalilo Home Road #ER104, Honolulu, HI 96825**

**Exhibit C – Certified Appraisal of 410 Atkinson Dr. #3319, Honolulu, HI  96814**

**Exhibit D – Certified Appraisal of 04-820 Kuhio Highway, #G-203, Kapaa, HI  96746**

**Exhibit E – Certified Appraisal of 1250 Ocean Drive, Unit 3F, Miami Beach, FL  33139**

**Exhibit F – Certified Appraisal of 5543 Kalanianaole Hwy., Lot 49, Honolulu, HI  96821**

ii

**PRELIMINARY STATEMENT**

Thomas M. Johnson, III, (hereinafter "Debtor") submits to his creditors this amended disclosure statement (hereinafter "Disclosure Statement") in connection with his Plan of Reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

Debtor submits this Disclosure Statement pursuant to 11 U.S.C. §1125 to provide creditors and interest holders information which the Debtor deems to be material, important and necessary to enable a hypothetical reasonable person with a claim or interest in this proceeding to make a reasonably informed decision in exercising his or her right to vote for acceptance or rejection of the Debtor's Plan.

**ARTICLE I**

**<u>Introduction</u>**

A.      **Purpose of Disclosure Statement**

The purpose of the Disclosure Statement is to provide "adequate information" of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor   and the condition of the Debtor's books and records, including a discussion of the potential material Federal tax consequences of the Plan of Reorganization to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about Debtor's Plan of Reorganization.  <u>See</u> 11 U.S.C. §1125(a).  As a creditor or other interested party, you should examine the Plan directly for further and more specific information.  You may also wish to consult with your legal and financial advisors.  You are urged to read the contents of this Disclosure Statement carefully before making your decision to accept or reject the Plan.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they existed before commencement of the case.

1

No representations concerning the Debtor's affairs, particularly as to any future earnings, value or property, are authorized by the Debtor except as set forth in this Disclosure Statement. In deciding whether to accept this Plan, you should not rely upon any information or representations other than the information contained in the Disclosure Statement.

**B.      Representations Limited**

**Approval of this Disclosure Statement does not constitute a determination by the Bankruptcy Court as to the fairness or the merits of the Plan.  No representations or other statements concerning the Debtor, the value of his assets, or the proposed plan are authorized by the Debtor, other than those expressly set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance, which are other than as set forth in this Disclosure Statement, should not be relied upon by you in arriving at your decision.  Any such additional representations and inducements should be reported to counsel for the Debtor.**

**Except as stated herein, the information contained herein has not been independently audited.  The accuracy of the information submitted with this Disclosure Statement is dependent upon accounting performed by the Debtor.  While every reasonable effort has been made to provide the most accurate information available, the Debtor is unable to warrant or represent that all information is without inaccuracies.**

**The values placed on the Debtor's property and summarized in the Disclosure Statement are the Debtor's best estimate of the values of the property as of the time of the preparation of the Disclosure Statement.  These values may differ from values placed on the same property at the time of the filing of the petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Petition") or the time of the filing of the Debtor's Schedules and Statement of Financial Affairs.**

**This Disclosure Statement is intended for the sole use of creditors and parties in interest to enable them to make an informed decision about the Plan.**

2

**This Disclosure Statement is not a solicitation for acceptance of the Plan. No solicitation can occur until after this Disclosure Statement has been approved by the Court.**

C.    **Voting Provisions**

1.    *General.*    Except for Claimants holding Administrative Claims, every holder of an Allowed Claim or Interest is entitled to vote to accept or reject the Plan. An Allowed Claim is a Claim or any portion thereof, (a) proof of which was filed on or before the date designated by the Bankruptcy Court as the last day for filing proofs of claims against the Debtor, or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in his Schedules in a liquidated amount and as not disputed or contingent, (b) as to which no objection to its allowance has been filed within the period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or by any Final Order of the Bankruptcy Court, or as to which an objection has been filed and such Claim has been allowed in whole or in part by a Final Order or such objection has been settled or withdrawn and (c) the amount of which has been liquidated and the liability therefore deemed non-contingent. "Claim" is defined in the Plan as "... a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code." As such, all Creditors who hold Allowed Claims against the Debtor, except as indicated below, may vote on the Plan by filling out the enclosed ballot and mailing it in the enclosed, self-addressed envelope to counsel for the Debtor.

2.    *Claimants Not Entitled to Vote: Administrative Claims.*    Claimants holding Administrative Claims and Allowed Priority Tax Claims are not entitled to vote on the Plan because Section 1123(a)(1) of the Code does not require that such Claims be designated in a Class and because the Plan provides for the payment of such Claimants under terms which satisfy the requirements of Sections 1129(a)(9)(A) and (C) of the Code. (Sections 1122(a) and 1123(a)(1) of the Code require that the Plan designate

3

Classes of Claims other than Administrative Claims and Allowed Priority Tax Claims and that each Class consist of substantially similar Claims).

Classes 1 and 9 (described below) are unimpaired Classes under the Plan and the Claimants in these Classes are not entitled to vote on the Plan.

3. *Claimants and Interest Holders Entitled to Vote: Impaired Claims.* Classes 2-8 and 10-15 (described below) are impaired classes under the Plan and the Claimants in these Classes are entitled to vote on the Plan.

4. *Acceptance of the Plan.* The Plan is deemed accepted by a Class of Creditors when it is approved by Claimants who hold at least two-thirds (2/3) of the dollar amount, and who comprise more than one-half (1/2) in number of the Allowed Claims of such Class that are held by Creditors who in fact vote. The Plan is deemed accepted by a Class of Interest holders when it is approved by holders of Interests that hold at least two-thirds (2/3) in an amount of the Allowed Interests in such Class. An abstention by a Creditor or the holder of an Interest will not count toward either acceptance or rejection of the Plan.

**IN ORDER FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST BE COMPLETED AND RECEIVED AT THE ADDRESS STATED ON THE BALLOT (WHICH IS ALSO SET FORTH BELOW) ON OR BEFORE THE COURT ORDERED DATE:**

> Craig A. Diehl, Esquire
> Law Offices of Craig A. Diehl
> 3464 Trindle Road
> Camp Hill, PA 17011

Even though a Creditor or the holder of an Interest may choose not to vote or may vote against the Plan, the Creditor or Interest holder will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of Creditors and Interest holders and/or is confirmed by the Court. Allowance of a Claim or Interest for voting purposes does not necessarily mean that the Claim or Interest

4

will be allowed for purposes of distribution under the terms of the Plan. Any Claim to which an objection has been or shall be made will be allowed for purposes of distribution only after determination by the Court. Such determination may be made after the Plan is confirmed.

5. *Confirmation Without Acceptance by All Impaired Classes.* Under Section 1129(b) of the Bankruptcy Code, the Bankruptcy Court can confirm a Plan even if the Plan is not accepted by each impaired Class, so long as the Plan has been accepted by at least one impaired Class. This procedure is commonly known as a "cram-down". The Court may confirm a Plan under the cram-down provisions if, in addition to satisfying the usual conditions of Section 1129 of the Code, the Plan (a) "does not discriminate unfairly" and (b) is "fair and equitable" with respect to each Class of Claims or Interests that is impaired under, and has not accepted, the Plan.

Debtor believes that the Plan does not "discriminate unfairly", because the distribution provided for in the Plan does not provide for treatment to any Class which is disproportionate to the treatment afforded to other Classes and Claimants of equal rank. Debtor believes that the Plan is "fair and equitable", as the Plan provides that the holders of Claims of a Class of Unsecured Claims will receive on account of their claims property having a value as of the effective date of the Plan equal to the Allowed Amount of such Claims before a junior Class of Claims or Interests will receive or retain any property under the Plan on account of the junior Claim or Interest. Since Debtor is retaining his interests in certain property, the Plan of Reorganization is subject to the absolute priority rule. The absolute priority rule requires that a Plan cannot be confirmed over the objection of a dissenting class unless the Debtor is able to persuade the Court that his Plan is fair and equitable.

**ARTICLE II**

**History of the Debtor**

**A.      Pre-Filing Operations and History**

Debtor is a married individual with five (5) children.  To date, Debtor has served in the military and called to active duty to serve our country overseas in Iraq and Afghanistan.  He is an Improvised Explosives Device (IED) expert and at the time of filing was on active duty with the military.

With being previously stationed in Hawaii, Debtor began accumulating investment real estate in Hawaii as a retirement planning strategy.  Debtor was able to secure necessary financing to purchase multiple properties, both in Hawaii and the continental United States.  Unfortunately, with the fallout of real estate values that began in 2008 through 2010, especially in Hawaii and Florida, Debtor began experiencing significant cash flow shortages as the rental incomes were not keeping pace to fund the mortgage payments, maintenance fees, real estate taxes, repairs and insurance.  To compound the situation, the Debtor's spouse lost the family business in 2009 as a result of the slumping economy.

Additional difficulties arose when Debtor was assigned and stationed in Carlisle, Pennsylvania.  Debtor had to rely on property managers to oversee his various real estate holdings and the management fees caused additional hardships on the cash flow necessary to sustain the various properties.  Coupled with the severe decline in values of real estate in Hawaii and Florida, Debtor was unable to liquidate the properties at a price sufficient to satisfy the mortgage indebtedness.

6

After analyzing several strategies, Debtor decided to pursue a Chapter 11 proceeding in an attempt to reorganize his holdings.  It is Debtor's hope that someday values will rise again and his investments turn out to be prudent investments.

**B.     The Chapter 11 Filing and Post-Petition Events**

On February 16, 2010 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Pennsylvania ("Bankruptcy Court").  Shortly after the Petition Date, Debtor obtained court approval for the appointment of Law Offices of Craig A. Diehl as his legal counsel.

Since the Petition Date, Debtor has been negotiating loan modifications with his various mortgage holders.  Debtor has secured appraisals supporting the values used in the Disclosure Statement.  It is Debtor's Plan to restructure the loans by reducing any mortgage indebtedness to the fair market value of each respective property and restructuring the mortgage payment to a level which will be sustained by the rental income.

Due to cash flow concerns, Debtor has consented to surrender two (2) timeshares identified as Ko Olina Beach Club Timeshare Unit KO 1203/07B, Kapolei-Oahu, Hawaii and Ko Olina Beach Club Timeshare Unit KO 3215/16B, Kapolei-Oahu, Hawaii, with Marriott Ownership Resorts, Inc.  Further, it appears that the property situate at 1700 Ala Moana Boulevard, Apartment 2601, Honolulu, Hawaii was sold via foreclosure prior to Debtor's bankruptcy filing.  The confusion regarding this property stems from a prior motion for relief being filed by the Association of Apartment Owners for Waikiki Marina without anything being said about the prior foreclosure.  Additionally, Debtor received a loan modification package from the Bank of Hawaii which Debtor presumes meant he still owned it.  Accordingly, Debtor

7

acknowledges that he now has no legal title in 1700 Ala Moana Boulevard, Apartment 2601, Honolulu, Hawaii. Further, Debtor has agreed to liquidate the two (2) lots in North Carolina. Debtor shall be retaining a realtor to professionally market these.

Debtor also was recently promoted to Colonel in the armed services and received a pay raise of One Thousand Four Hundred Dollars ($1,400.00) per month which will take effect in August, 2011. In mid-September, 2011, Debtor will be deployed to serve in Afghanistan for one (1) year. During his deployment, he will receive an additional Two Thousand Two Hundred Dollars ($2,200.00) per month from combat allowances and tax exemptions.

## ARTICLE III

### Summary of the Plan of Reorganization

The following is a summary of certain significant elements contained in the Plan of Reorganization proposed by the Debtor. The Plan, if confirmed, will become an agreement that is legally binding. Holders of Claims and Interests are, accordingly, urged to read all of the provisions of the Plan carefully and to consult with counsel in order to understand the Plan fully.

### A. General Outline of the Plan

Debtor believes that loan modifications shall provide the necessary cash flow to fund his Plan. The Plan further provides for payment to the various Classes of Creditors in accordance with the priorities set forth in the Bankruptcy Code to the extent of the Debtor's financial abilities. The Debtor believes that, under the Plan, holders of Claims will obtain the best possible recovery in this proceeding.

In order for a holder of a Claim or Interest to participate in the Plan and to receive the treatment offered to the Class under which the claim is classified, that holder's Claim or Interest

8

must be "allowed". An Allowed Claim is a Claim which the Debtor's schedules list as neither contingent, unliquidated, nor disputed or as to which a timely proof of claim has been filed and as to which no objection has been made or will be made within the time limit set forth in the Plan or which has been allowed by a Final Order of the Bankruptcy Court and which Claim is not an administrative expense as defined in the Plan.

Any Creditor who has a disputed, contingent, or unliquidated Claim and who has failed to file a proof of claim by the applicable bar date is barred from sharing in any distribution under the Plan.

### B. Treatment of Administrative Expenses

All unpaid costs or expenses of administration of the Debtor's Chapter 11 case which are entitled to priority of distribution under Bankruptcy Code §503(b) and §507(a)(1) will be paid in full. These expenses generally include costs of compensation for fees and expenses of attorneys, accountants, and other professionals retained by the Debtor to the extent allowed by the Bankruptcy Court, various taxes incurred after the Petition Date, court costs, and fees assessed by the Office of the United States Trustee. As of the filing date of the Amended Disclosure Statement, attorney fees of $9,868.42 have been submitted for approval by the Court. It is anticipated that additional legal fees necessary to achieve Plan confirmation should not exceed $15,000.00.

Administrative Expense Claims shall be paid in full no later than thirty (30) days following later of either (a) Bankruptcy Court approval of the Administrative Expense Claim in question or (b) the Effective Date. No further quarterly fee payments shall be paid to the Office of the United States Trustee after the Debtor's case is closed.

9

Administrative expenses representing (a) liabilities incurred in the ordinary course of business by the Debtor or (b) liabilities arising under loans or advances to the Debtor shall be paid by the Debtor in accordance with the terms and conditions of the particular transactions.

The "Effective Date" of the Plan is defined in the Plan as the date thirty (30) days after the Confirmation Date.

### C.      Treatment of Tax Claims

Each holder of a tax claim shall receive the actual tax amount plus statutory interest over a five (5) year period.  Monthly payments of One Thousand Two Hundred Dollars ($1,200.00) shall be paid for outstanding tax obligations.  Debtor shall remain current on the filing of all post-petition/post-confirmation returns and payment of the post-petition/post-confirmation taxes. In the event of default by Debtor of any provisions of the Plan concerning his tax obligations, after thirty (30) days written notice of the default and failure of Debtor to cure, the entire amount owed to the tax agency shall be immediately due and owing, and the tax agency may proceed with any remedies otherwise available to it under state law, including but not limited to usual tax collection procedures, conversion or dismissal under 11 USC §1112(b).

Additionally, the bankruptcy case will not be closed or a request made for final decree unless Debtor is current with his post-petition tax filings and payments.

### D.      Classes of Creditors and Interests and Their Treatment Under the Plan

The Plan divides the creditors into separate classes, as summarized in the table below, and more particularly described in the paragraphs that follow:

10

| Summary of Classification of Claims |
|---|---|---|---|---|
| Class | Title | Estimated Amount of Claims | Treatment | Impaired? |
|---|---|---|---|---|
| 1 | Association of Apartment Owners of Ala Moana Hotel Condominium | 110,000.00 | $7,200 secured by Statute | No |
| 2 | Bank of America | $748,000.00 $150,000.00 | Cram Down to $690,000.00 – Loan Modification [1] | Yes |
| 3 | Bank of America | $1,485,861.00 $196,000.00 | Cram Down to $850,000.00 – Loan Modification [2] | Yes |
| 4 | Chase Home Finance, LLC | $617,781.00 | Cram Down to $512,000.00 - Loan Modification [3] | Yes |
| 5 | Green Planet Servicing, LLC | $458,362.00 | Cram Down to $348,000.00 – Loan Modification [4] | Yes |
| 6 | Aurora Loan Services, LLC | $1,008,804.00 | Cram Down to $335,000.00 - Loan Modification [5] | Yes |
| 7 | EMC Mortgage Corp. | $1,870,000.00 $711,291.89 | Cram Down to $1,700,000.00 - Loan Modification [6] | Yes |
| 8 | Central Pacific Bank | $34,000.00 | Unsecured – Class 15 | Yes |
| 9 | Association of Apartment Owners of Waipouli Beach Resort | $58,000.00 | $7,200.00 secured by Statute | No |

---

[1] See Certified Appraisal attached as Exhibit A.
[2] See Certified Appraisal attached as Exhibit B.
[3] See Certified Appraisal attached as Exhibit C.
[4] See Certified Appraisal attached as Exhibit D.
[5] See Certified Appraisal attached as Exhibit E.
[6] See Certified Appraisal attached as Exhibit F.

| 10 | BB&T | $91,602.00 | Property to be liquidated or surrendered | Yes |
|---|---|---|---|---|
| 11 | BB&T | $83,254.00 | Property to be liquidated or surrendered | Yes |
| 12 | Mortgage Capital Group, LLC | $290,383.00 | Unsecured – Class 15 | Yes |
| 13 | Michael H. Nekoba Daryle S.H. Nekoba | $221,000.00 | Unsecured – Class 15 | Yes |
| 14 | Old Republic National Title Insurance Company | $223,784.00 | Unsecured – Class 15 | Yes |
| 15 | Unsecured Creditors | | Payout of $129,600.00 over six (6) years in equal monthly installments | Yes |
| 16 | Debtor's Interests | | | No |

1.    *Class 1 – Association of Apartment Owners of Ala Moana Hotel Condominium.*  Class 1 consists of a secured claim in the amount of Seven Thousand Two Hundred Dollars ($7,200.00).  The remaining balance shall be a continuing lien on the property pursuant to Hawaii statutes and paid over seventy-two (72) months.  The holder of Class 1 claim is unimpaired and not entitled to vote.

2.    *Class 2 – Bank of America.*  Class 2 consists of the secured claims of Bank of America.  Bank of America holds first and second mortgage in real estate identified as 1177 Queen Street #3705, Honolulu, Hawaii.  Debtor-in- Possession intends to pay Bank of America a cram down value of $690,000.00 based on a certified appraisal attached as Exhibit "A" at a variable rate of Wall Street Journal prime rate plus 1.25% amortized for thirty (30) years and a maturity date of the fifth (5th) annual anniversary of the date when the Plan Confirmation Order is entered.  The base rate (Wall Street Journal prime rate plus 1.25%) shall adjust on a monthly basis based on the published rate as of the first of

each month. The initial monthly payment would be in the amount of $3,498.30. All other terms and conditions contained in the initial loan documents would remain unaltered. The holder of Class 2 claims are impaired under the Plan and entitled to vote.

  3. *Class 3 – Bank of America.* Class 3 consists of the secured claims of Bank of America. Bank of America holds a first and second mortgage in real estate identified as 520 Lunalilo Home Road #104, Honolulu, Hawaii 96825. Debtor-in-Possession intends to pay Bank of America a cram down value of $850,000.00 based on a certified appraisal attached as Exhibit "B" at a variable rate of prime rate plus 1.25% amortized for thirty (30) years and a maturity date of the fifth (5th) annual anniversary of the date when the Plan Confirmation Order is entered. The base rate (Wall Street Journal prime rate plus 1.25%) shall adjust on a monthly basis based on the published rate as of the first of each month. The initial monthly payment would be in the amount of $$4,309.50. All other terms and conditions contained in the initial loan documents would remain unaltered. The holder of Class 3 claims are impaired and entitled to vote.

  4. *Class 4 – Chase Home Finance, LLC.* Class 4 consists of the secured claim of Chase Home Finance, LLC. Chase Home Finance holds a first mortgage in real estate identified as 410 Atkinson Drive #3319, Honolulu, Hawaii. Debtor-in-Possession intends to pay Chase Home Finance, LLC a cram down value of $512,000.00 based on a certified appraisal attached as Exhibit "C" at a variable rate of prime rate plus 1.25% amortized for thirty (30) years and a maturity date of the fifth (5th) annual anniversary of the date when the Plan Confirmation Order is entered. The base rate (Wall Street Journal prime rate plus 1.25%) shall adjust on a monthly basis based on the published rate as of the first of each month. The initial monthly payment would be in the amount of $2,596.00. All other terms and conditions contained in the initial loan documents would remain unaltered. The holder of Class 4 claim is impaired and entitled to vote.

13

5. *Class 5 – Green Planet Servicing, LLC.* Class 5 consists of the secured claim of Green Planet Servicing, LLC. Green Planet Servicing, LLC holds a first mortgage in real estate identified 4-820 Kuhio Highway #C-203, Kapaa, Hawaii. Debtor-in-Possession intends to pay Green Plant Servicing, LLC, a cram down value of $348,000.00 based on a certified appraisal attached as Exhibit "D" at a variable rate of prime rate plus 1.25% amortized for thirty (30) years and a maturity date of the fifth (5th) annual anniversary of the date when the Plan Confirmation Order is entered. The base rate (Wall Street Journal prime rate plus 1.25%) shall adjust on a monthly basis based on the published rate as of the first of each month. The initial monthly payment would be in the amount of $1,739.00. All other terms and conditions contained in the initial loan documents would remain unaltered. The holder of the Class 5 claim is impaired under the Plan and entitled to vote.

6. *Class 6 – Aurora Loan Services, LLC.* Class 6 consists of the secured claim of Aurora Loan Services, LLC. Aurora Loan Services, LLC holds a first mortgage in real estate identified as 1250 Ocean Drive, 3F, Miami, Florida. Debtor-in-Possession intends to pay Aurora Loan Services, LLC a cram down value of $335,000.00 based on a certified appraisal attached as Exhibit "E" at five percent (5.0%) per annum amortized for twenty-five (25) years. The monthly payment would be in the amount of $1,959.75. The holder of Class 6 claim is impaired and entitled to vote.

7. *Class 7 – EMC Mortgage Corp.* Class 7 consists of the secured claims of EMC Mortgage Corp. EMC Mortgage Corp. holds a first and second mortgage in real estate identified as 5543 Kalanianaole Highway, Honolulu, Hawaii. Debtor-in-Possession intends to pay EMC Mortgage Corp. on the first mortgage a cram down value of $1,700,000.00 based on a certified appraisal attached as Exhibit "F" at a variable rate of prime rate plus 1.25% amortized for thirty (30) years with a maturity date of the fifth (5th) annual anniversary of the date when the Plan Confirmation Order is entered. The

14

initial monthly mortgage payment shall be due and payable thirty (30) days from Plan Confirmation.  The base rate (Wall Street Journal prime rate plus 1.25%) shall adjust on a monthly basis based on the published rate as of the first of each month.  The initial monthly payment would be in the amount of $8,619.00.  The second mortgage is fully undersecured and will be placed in Class 15.  All other terms and conditions contained in the initial loan documents would remain unaltered.  The holder of Class 7 claims is impaired and entitled to vote.

8.      *Class 8 – Central Pacific Bank.*  Class 8 consists of the claim of Central Pacific Bank.  Central Pacific Bank holds a second mortgage on 4-820 Kuhio Highway #203, Kapaa, Hawaii.  The claim is fully undersecured and will fall into Class 13.  The holder of Class 8 claim is impaired under the Plan and entitled to vote.

9.      *Class 9 – Association of Apartment Owners of Waipouli Beach Resort.*  Class 9 consists of a secured claim in the amount of Seven Thousand Two Hundred Dollars ($7,200.00).  The remaining balance shall be a continuing lien on the property pursuant to Hawaii statutes and paid over seventy-two (72) months. The holder of Class 9 claim is unimpaired and not entitled to vote.

10.      *Class 10 – BB&T.*  Class 10 consists of the secured claim of BB&T.  Debtor-in-Possession intends to liquidate and/or surrender the property.  The holder of Class 10 claim is impaired and entitled to vote.

11.      *Class 11 – BB&T.*  Class 11 consists of the secured claim of BB&T.  Debtor-in-Possession intends to liquidate and/or surrender the property.  The holder of Class 11 claim is impaired and entitled to vote.

12.      *Class 12 – Mortgage Capital Group, LLC.*  Class 12 consists of the secured claim of Mortgage Capital Group, LLC.  Mortgage Capital Group, LLC holds a second or third mortgage on real estate identified as 410 Atkinson Drive #3319,

15

Honolulu, Hawaii. The mortgage is fully undersecured and will be placed in Class 15. The holder of Class 12 claim is impaired and entitled to vote.

13. *Class 13 – Michael H. Nekoba and Daryle S.H. Nekoba.* Class 13 consists of the secured claim of Michael H. Nekoba and Daryle S.H. Nekoba. The Nekobas have a third mortgage on 1177 Queen Street, Honolulu, Hawaii. The mortgage is fully undersecured and will be placed in Class 15. The holder of Class 13 claim is impaired and entitled to vote.

14. *Class 14 – Old Republic National Title Insurance Company.* Class 14 consists of the secured claim of Old Republic National Title Insurance Company. Old Republic has two (2) equity line of credit facilities. The mortgages are fully undersecured and will be placed in Class 15. The holder of Class 14 claim is impaired and entitled to vote.

15. *Class 15 – Unsecured Creditors.* Class 15 consists of the unsecured claims. Debtor intends to pay this Class a total of One Hundred Twenty-Nine Thousand Six Hundred Dollars ($129,600.00) to be distributed on a pro-rata basis. Monthly payments of One Thousand Eight Hundred Dollars ($1,800.00) shall be paid for seventy-two (72) months.

16. *Class 16 – Debtor's Interests.* Debtor shall retain his legal interests in the assets set forth in his bankruptcy schedules.

## ARTICLE IV

## Means for Execution of the Plan

The funds needed to effect the payments proposed under the Plan will be generated from the following sources:

1. Rental Income (See Exhibit "1" for cash flow projections from rental properties);

2.     Debtor's military wages of Fourteen Thousand Nine Hundred Ninety Dollars ($14,990.00) per month.

## ARTICLE V
## <u>Liquidation Analysis</u>

**A.    Effective Chapter 7 Liquidation**

If no Plan of Reorganization can be confirmed, the Debtor's Chapter 11 reorganization case may be converted to a case under Chapter 7 of the Bankruptcy Code. In the Chapter 7 case, a trustee would be appointed to liquidate the assets of the Debtor for distribution to its creditors in accordance with the priorities mandated by the Bankruptcy Code.

**B.    Liquidation of Assets**

If this case is converted to a case under Chapter 7 of the Bankruptcy Code, the Debtor believes that the liquidation sale of the Debtor's property will result in a zero percent (0%) repayment plan to Debtor's unsecured creditors. See Exhibit "1" attached hereto for liquidation analysis and cash flow projections. Debtor's cash flow projections in Exhibit "1" are based on the market potential of each property supported by multiple factors which include increased tourism due to a boom in Asian markets, a new Hawaii Visitor Bureau marketing campaign, and an enhanced rental marketing program.

Historically, Debtor's monthly operating reports show the following gross results:

| Month | Gross Receipts | Expenses Needed for Properties | Chapter 11 Plan Payments | Household Expenses | |
|---|---|---|---|---|---|
| May 2011 | $23,663.00 | $31,000.00 | | $14,426.00 | ($21,763.00) |
| June 2011 | $32,762.00 | $31,000.00 | | $13,704.00 | ($11,942.00) |
| July 2011 | $29,396.00 | $31,000.00 | | $12,801.00 | ($14,405.00) |
| August 2011 | $43,523.00 | $31,000.00 | | $16,180.00 | ($3,657.00) |

| | | | | | |
|---|---|---|---|---|---|
| September 2011 | $55,682.00 | $31,000.00 | | $9,881.00 | $14,801.00 |
| Prospectively, Debtor's monthly operating results are expected to reveal the following: | | | | | |
| October 2011 | $47,000.00 | $30,320.00 | | $10,000.00 | $6,680.00 |
| November 2011 | $47,000.00 | $30,320.00 | | $10,000.00 | $6,680.00 |
| December 2011 | $47,000.00 | $30,320.00 | $5,200.00 | $10,000.00 | $1,480.00 |

**ARTICLE VI**

**<u>Acceptance and Confirmation of the Plan</u>**

The Plan can be confirmed only if the Bankruptcy Court determines that the Plan complies with the technical requirements set forth in Chapter 11 of the Bankruptcy Code. The Court must also determine that the Debtor's disclosures concerning the Plan have been adequate and have included all information concerning all payments made or promised by the Debtor in connection with the Plan.

The Bankruptcy Code also requires that (1) the Plan be accepted by the requisite votes of Creditors and Interest holders, except to the extent that confirmation despite dissent is available under Section 1129(b) of the Bankruptcy Code; (2) the Plan is feasible and that there is a reasonable probability that the Debtor will be able to perform its obligations under the Plan and the confirmation of the Plan is not likely to be followed by the need for any further financial reorganization; and (3) the Plan is in the "best interests" of all Creditors and Interest holders in that the Creditors and Interest holders will receive at least as much pursuant to the Plan as they would have received in a liquidation of the Debtor's assets under Chapter 7 of the Code.

The Court, to confirm the Plan, must find that all the conditions are met unless the applicable provisions of Section 1129(b) are utilized. Even if the Creditors of the Debtor accept the Plan by the requisite number of votes, the Court must nevertheless make an independent finding respecting the Plan's conformity to the requirements of the Code, the Plan's feasibility

and whether the Plan is in the best interests of the Debtor, Creditors and Interest holders before it may confirm the Plan.

The Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan. The Bankruptcy Code defines "acceptance" of the Plan by a Class of Claims as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of Claims in the Class. For voting purposes, only those Creditors who actually vote to accept or reject the Plan are counted. The Bankruptcy Code defines acceptance of a Plan by a class of interests as acceptance by holders of two-thirds (2/3) in amount of the Allowed Interests in the Class, but for this purpose counts only Interests actually voted. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan, although such persons are bound by a confirmed plan.

Classes of Claims or Interests that are not "impaired" under a Plan are deemed to have accepted the Plan and are not entitled to vote. A Class is impaired if the legal, equitable, or contractual rights attaching to the Claims or Interests of that Class are modified other than by curing defaults and reinstating maturity or by payment of cash in full. Under this Plan, claims in Classes 2-15 are impaired.

## ARTICLE VII

## Miscellaneous Provisions of the Plan

### A.      Property of the Estate

The Plan provides that upon the Confirmation Date, the Debtor shall retain all of his property.

### B.      Retention, Enforcement and Waiver of Claims

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Plan provides that the Debtor shall retain and may enforce any and all claims of the Debtor and/or the Debtor-in-Possession.

Case 1:10-bk-01151-RNO    Doc 245    Filed 10/27/11    Entered 10/27/11 17:24:31    Desc
Main Document      Page 22 of 28

### C. Objections to Claims and Interests

The Plan permits the Debtor to file objections to the validity and/or amount of any Creditors' filed Claims no later than twenty (20) days after the Effective Date of the Plan.

### D. Executory Contracts and Unexpired Leases

During the course of his Chapter 11 proceedings, Debtor may assume or reject any unexpired leases or executory contracts before the Confirmation Date. Under the Plan, any executory contracts and unexpired leases which have been not assumed by the Confirmation Date are deemed rejected as of the Effective Date. Debtor does assume the executory contracts with First Global BYO Corporation, Optek, Inc; San Jose Builders, Inc., and Apartment Owners of Waikiki Marina Condominium.

Any claim for damages arising by reason of the rejection of any executory contract or unexpired lease shall be treated as an Allowed Unsecured Claim under the Plan provided that (a) a proof of claim is filed with the Clerk of the Bankruptcy Court within thirty (30) days after the Effective Date and (b) no objection is filed to such proof of claim within the applicable period specified in the Plan. The Plan makes clear that nothing contained in the Plan should be deemed to be an admission by the Debtor that any rejection of a lease or executory contract, in fact, gives rise to or results in a valid claim against the Debtor and that the Debtor shall not be deemed to have waived any objections to such claim.

### E. Modification of the Plan

The Plan provides that the Debtor may modify or amend the Plan as permitted by Section 1127 of the Bankruptcy Code at any time prior to the confirmation date. After the confirmation date, the Reorganized Debtor may, with the approval of the Court, and so long as such modification does not adversely or materially affect the interests of the holders of any claims or

interests, modify or amend the Plan to remedy any defect or omission or to reconsider any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

**F.     Retention of Jurisdiction**

The Plan provides that the Bankruptcy Court shall retain jurisdiction over the Debtor's case until such time as the Debtor fulfills the provisions of the Plan.  During the term of the Plan and subject to the time limits set forth in the Plan, the Debtor will retain his right to object to Claims, to challenge the validity of any claimed security interest in assets of the estate, and to bring various motions and adversary proceedings.

**G.     Rules of Construction, Notice, and Governing Law**

The Plan provides various rules relating to computation of time and the effect to be provided to headings and underlinings in the Plan.   The Plan also contains the following miscellaneous provisions:

1.      The Plan states that in cases where the Bankruptcy Code or other federal laws are inapplicable, the state law where the real estate is located shall be deemed to govern;

2.      The Plan provides that the rights, duties, and obligations of all persons or entities referred to in the Plan shall be binding upon and shall inure to the benefit of its successors and assigns;

3.      The Plan sets forth the address of Debtor's counsel for purposes of notice under the Plan.

**H.     U.S. Trustee Fees**

The reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6).  After confirmation and within thirty (30) days after the end of each

21

calendar quarter, the reorganized Debtor shall file with the Court and serve on the United States Trustee a quarterly financial report for each calendar quarter (or portion thereof) during which the case remains open, in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee.

### I.      Legal Proceedings

Several lawsuits had been commenced against Debtor prior to the Chapter 11 filing.  All these suits have been addressed in Debtor's Plan of Reorganization.

### J.      Discharge of the Debtor

The discharge of the Debtor shall be governed by §1141(d)(5) of the Bankruptcy Code.

### K.      Distribution Agent

Counsel for Debtor, Craig A. Diehl, Esquire, C.P.A., shall act as the Distribution Agent. The Distribution Agent shall be entitled to reasonable compensation from the Distribution Fund for services rendered pursuant to his appointment.  The Distribution Agent shall be entitled to compensation without approval by the Bankruptcy Court, provided that the Distribution Agent serves a copy of a detailed invoice describing the services for which compensation is sought upon the Office of the United States Trustee, and said party receiving service has not moved for review of such compensation by the Bankruptcy Court within ten (10) days of such service.

### L.      Transmittal of Distributed Property.

Except as may otherwise be agreed to by the holder of a particular Claim, any property to which such holder shall become entitled under the provisions of this Plan, shall be delivered to such holder by regular mail, postage prepaid, in an envelope addressed to such holder as he or his authorized agent may direct in a request filed, on or before the Effective Date, with the Bankruptcy Court, but if no such request is filed, to the address shown in the Debtor's Schedules,

22

or, if a different address is stated in a proof of claim duly filed by such holder, to such address. In all cases where delivery or distribution of any property is effectuated by mail, the date of delivery or distribution shall be the date of mailing. Property delivered in accordance with this section will be deemed delivered to the holder regardless of whether such property is actually received by such holder.

## ARTICLE VIII

### Conclusion

The Debtor submits that this Amended Disclosure Statement complies in all respects with Chapter 11 of the Bankruptcy Code and recommends that the holders of claims who are entitled to vote on the Plan vote to accept the Plan.

By: /s/ THOMAS M. JOHNSON, III
Thomas M. Johnson, III,
Debtor-in-Possession

Case 1:10-bk-01151-RNO    Doc 245    Filed 10/27/11    Entered 10/27/11 17:24:31    Desc
Main Document      Page 26 of 28

# EXHIBIT 1

## LIQUIDATION ANALYSIS

| Assets | FMV | Estimated Amount to be Realized | Estimated Liquidation Value |
|---|---|---|---|
| | | | |
| 520 Lunalilo Home Road #ER104, Honolulu, HI | $850,000.00 | 90% | $765,000.00 |
| 1177 Queen Street Apt. 3705, Honolulu, HI | $690,000.00 | 90% | $621,000.00 |
| 410 Atkinson Drive #3319, Honolulu, HI | $512,000.00 | 90% | $460,800.00 |
| 04-820 Kuhio Highway #G-203, Kapaa, HI | $348,000.00 | 90% | $313,200.00 |
| 1250 Ocean Drive, Unit 3F Carlyle Deco Hotel Condo, Miami, FL | $335,000.00 | 90% | $301,500.00 |
| 5543 Kalanianaole Highway Lot 49, Honolulu, HI | $1,700,000.00 | 90% | $1,530,000.00 |
| Lot #96, Carolina Shores Bath, NC | $55,000.00 | 90% | $49,500.00 |
| Lot #47, Merriman Bay Beaufort, NC | $55,000.00 | 90% | $49,500.00 |
| Personal Property | $108,708.00 | 60% | $65,225.00 |
| **Net Value of Assets** | | | **$4,155,725.00** |
| | | | |
| **SECURED DEBT** | | | |
| Bank of America | | | $1,681,861.00 |
| Bank of America | | | $898,000.00 |
| Chase Home Finance | | | 617,700.00 |
| Green Planet Servicing | | | $458,000.00 |
| Aurora Loan Services | | | $1,008,000.00 |
| EMC Mortgage Corp. | | | $2,581,291.89 |
| BB&T | | | $91,600.00 |
| BB&T | | | $83,200.00 |
| **Total Secured Debt** | | | **$7,419,652.89** |
| | | | |
| **NET WORTH** | | | **-0-**[7] |

---

[7] Since secured debts pertain to a specific property, personal property that was not exempt totaling $50,500.00 would be available to the unsecured creditors.