IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| THOMAS M. JOHNSON, III, | Case No. 1-10-BK-01151(RNO) |
| Debtor. | |
| Keiko Nakamura White and Toshiko Nakamura, Movants | |
| v. | |
| Thomas M. Johnson, III, Respondent | |

**SETTLEMENT STIPULATION AND ORDER MODIFYING STAY
AND SETTING AMOUNT OF ALLOWED UNSECURED CLAIM**

This Settlement Stipulation (the "Agreement") is entered into this 3rd day of April, 2012 by Keiko Nakamura White and Toshiko Nakamura ("Movants" or "White and Nakamura"), by their attorneys, Alston Hunt Floyd & Ing and Weir & Partners LLP, and Thomas M. Johnson, III (the "Debtor" or "Johnson"), by his attorney, Craig A. Diehl, Esquire. (Movants and the Debtor are sometimes jointly referred to as the "Parties" and singularly referred to as a "Party").

BACKGROUND

The Hawai'i State Action

A. On June 6, 2006, by Assignment of Apartment Lease (the "Lease Assignment"), White and Nakamura, as assignees, acquired the Debtor's entire leasehold interest in Waikiki Landmark Apartment No. (Mauka) 1502, 1888 Kalakaua Avenue, Honolulu, Hawai'i, 96815, Tax Map Key No. (1) 2-6-014-039 CPR No. 0065 as identified in the Office of the Assistant Registrar of the Land Court of the State of Hawai'i ("Land Court") as Document No. 3438534 and noted on

TCT No. 651,269 (the "Property") for the amount of $582,500.00.

B. On May 2, 2006, the Debtor executed and delivered to White and Nakamura a Deposit Receipt Offer and Acceptance ("DROA") contract for sale of his entire leasehold interest in the Property and evidencing his acceptance of their deposit for same.

C. After the Debtor signed the DROA but prior to the execution and recording of the Lease Assignment, the Debtor executed and delivered to Michael and Daryle Nekoba (the "Nekobas") a Promissory Note in the principal amount of $221,000.00 (the "Nekoba Note"), secured by a mortgage dated May 10, 2006 on the Property (the "Nekoba Mortgage"). The Nekoba Mortgage was recorded in the Bureau on May 19, 2006 as Document No. 3431085, TCT No. 651,269.

D. The Debtor executed his pre-closing Seller's Real Property Disclosure Statement in connection with the sale of the Property to White and Nakamura on May 20, 2006, but he did not disclose the Nekoba Mortgage therein or otherwise. On June 6, 2006, the Debtor and White and Nakamura closed on the Lease Assignment. The Lease Assignment was recorded in the Land Court on June 9, 2006.

E. Due to the Debtor's purported default under the Nekoba Note, on April 13, 2009, the Nekobas filed a foreclosure action in the Hawai'i State Court captioned *Nekoba v. Johnson, et al.*, Civil No. 09-1-0845-04 KNB (the "Hawai'i State Action"), naming White and Nakamura as defendants due to their interest in the Property.

F. On June 10, 2009, White and Nakamura answered the Nekobas' Complaint in the Hawai'i State Action, asserted a counterclaim against the Nekobas, and asserted a crossclaim against the Debtor (the "Crossclaim"). The Debtor did not file a response to the Crossclaim.

The Bankruptcy Case

G.  On February 16, 2010, the Debtor filed a voluntary petition for relief under 11 U.S.C. §§101 *et seq.* in the United States Bankruptcy Court for the Middle District of Pennsylvania, which, among other things, operates as a stay to the continued prosecution of White and Nakamura's Crossclaim against the Debtor in the Hawai'i State Action.

H.  By Motion for Order Modifying Automatic Stay under Section 362(d) of the Bankruptcy Code dated January 31, 2012 (the "Motion"), White and Nakamura sought relief from the automatic stay to allow them to (i) obtain an Order from the Hawai'i State Court in the Hawai'i State Action directing entry of default against the Debtor for failure to respond to Movants' Crossclaim in the Hawai'i State Action, (ii) obtain an order from the Hawai'i State Court compelling Debtor and/or his agent's production of documents responsive to White and Nakamura's First Request for Production of Documents dated October 8, 2008, and (iii) permit White and Nakamura to liquidate their Crossclaim against the Debtor.

I.  By Order of the Bankruptcy Court dated October 4, 2011, the Court ruled that the Property was not an asset of the bankruptcy estate.

J.  On February 23, 2012, White and Nakamura filed proof of claim, No. 30 in an unliquidated amount.

K.  The Parties hereto desire to set forth in this Agreement the terms and conditions of their settlement.

TERMS OF AGREEMENT

NOW, THEREFORE, the Parties hereto, intending to be legally bound hereby, mutually agree as follows:

1.  Modification of Automatic Stay.  The automatic stay under §362(a) of the

3

401157-1

Bankruptcy Code shall be modified solely to compel Johnson to produce certain documents in the Hawai'i State Action, as follows: all emails and related attachments from Johnson's email address "treyjohn3@aol.com" from April 15, 2006 through December 31, 2008 relating to the Nekoba Mortgage and the sale of the Property, such documents to be produced on or before April 27, 2012.

2. <u>Allowed Amount of White and Nakamura Claim</u>. White and Nakamura shall file an amended proof of claim in the amount of $404,925.15 (the "White Claim"). Under the Debtor's Fourth Amended Plan of Reorganization dated April 3, 2012 (the "Fourth Plan"), the White Claim shall be an allowed Class 15 unsecured claim and the Debtor shall not object to the White Claim. If, for any reason, the Debtor files a further amended plan of reorganization, the White Claim shall be an allowed unsecured claim under any such future modified or amended plan.

3. <u>Distribution under Fourth Plan.</u> Until a final determination by the Hawai'i State Court of the amount of the Crossclaim (the "Damages") or other resolution of the Crossclaim between the Parties, quarterly distributions under the Fourth Plan (or distributions under any further amended plan of reorganization) will be retained by Debtor's counsel ("Escrow Agent") in escrow (the "Escrow"). In the event that the Damages differ from the White Claim (the "Modified Claim"), then the amount of White and Nakamura's distribution under the Fourth Plan, or any further amended Plan, shall be recalculated and distribution from the Escrow shall be promptly made to White and Nakamura. In any event, following the award of Damages or other resolution of the Crossclaim, Escrow Agent shall deliver quarterly distributions under the Fourth Plan based on the amount of the Modified Claim.

4. <u>No Judgment in Hawai'i State Action.</u> No personal judgment, whether by default

4

401157-1

or otherwise, shall be entered by the Hawai'i State Court against the Debtor with respect to the Crossclaim.

5. <u>No Other Representations</u>. The Parties, with the advice of their respective counsel, have freely, voluntarily and without duress or coercion, entered into this Agreement, and its terms are not based upon any representations of any Party or counsel of any Party hereto except as are contained in this Agreement.

6. <u>Construction</u>. This Agreement shall be construed in accordance with the laws of Commonwealth of Pennsylvania without regard to its laws on conflicts of law. Any claim or action with respect to or arising out of this Agreement shall be brought in the United States Bankruptcy Court for the Middle District of Pennsylvania.

7. <u>Survival</u>. This Agreement shall survive the conversion, dismissal or closing of the Bankruptcy Case.

8. <u>No Admission of Liability; Inadmissibility</u>. Nothing in this Agreement shall be deemed or construed as an admission of liability or wrongdoing on the part of any Party. This Agreement is not admissible in any judicial or other proceeding other than may be necessary to enforce the terms of the Agreement.

9. <u>Severability</u>. If any provision of this Agreement shall be held invalid or unenforceable pursuant to applicable law, the remaining provisions hereof shall continue to be fully effective without giving consideration to such invalid or unenforceable portions.

10. <u>Parties Bound</u>. This Agreement shall be binding on the Parties hereto in any capacity in which they have rights or authority and, if any, their successors, assigns, trustees, employees, agents (excluding attorneys), and all other representatives acting on their respective behalves. No provision of this Agreement will in any way inure to the benefit of any other third

5
401157-1

Case 1:10-bk-01151-RNO   Doc 343   Filed 04/04/12   Entered 04/04/12 09:25:27   Desc
Main Document   Page 5 of 7

person so as to constitute such person as a third party beneficiary of the Agreement or of any one or more of the terms thereof, or otherwise give rise to any cause of action by any such person, except as specifically contemplated by the express terms hereof.

11. <u>Gender and Number</u>. Words used in the masculine shall apply to feminine where applicable, and when the context requires, the plural shall be read as the singular and singular as the plural.

12. <u>Headings</u>. Headings used in this Agreement are inserted for convenience of reference only and will not have the effect of changing the meaning of the express terms of this Agreement, and any conflict between such headings and the text of the Agreement shall be resolved in favor of the text.

13. <u>No Negative Inference Against Preparer</u>. This Agreement is the result of negotiations between the Parties, each of whom is represented by counsel of its choosing. All Parties shall be deemed to have drawn this Agreement and no negative inference or interpretation shall be made by a court against the Party whose counsel drafted this Agreement.

14. <u>Counterparts</u>. This Agreement may be executed in an original and any number of counterparts, each of which will be deemed an original, and which together will constitute one and the same instrument.

15. <u>Further Actions</u>. The Parties agree to execute such additional documents and to perform all such other and further acts as may be necessary or desirable to implement this Agreement.

16. <u>Agreement Complete</u>. This Agreement embodies the entire understanding, terms, and conditions of the Parties with respect to the matters discussed and may not be altered, superseded, or otherwise modified except in a writing signed by the Party to be charged. The

6

401157-1

Case 1:10-bk-01151-RNO    Doc 343    Filed 04/04/12    Entered 04/04/12 09:25:27    Desc
Main Document    Page 6 of 7

terms of this Agreement are contractual and not a mere recital, and no representation has been made to any of the undersigned that is not contained herein. All executed copies of this Agreement are duplicate originals, equally admissible as evidence.

17. <u>Approval</u>. This Agreement is expressly contingent upon approval by the United States Bankruptcy Court for the Middle District of Pennsylvania.

IN WITNESS WHEREOF, each of the Parties hereto, intending to be legally bound hereby, has executed this Agreement on the day and year first written above.

WEIR & PARTNERS LLP

_/s/_____
Bonnie R. Golub, Esquire
Abbe A. Miller, Esquire
1339 Chestnut Street, Suite 500
The Widener Building
Philadelphia, PA 19107
(215) 665-8181
Counsel for Keiko Nakamura White
 and Toshiko Nakamura

LAW OFFICES OF CRAIG A. DIEHL,

_Craig A. Diehl_____
Craig A. Diehl, Esquire
3464 Trindle Road
Camp Hill, PA 17011
(717) 763-7613
Counsel for Thomas M. Johnson, III,
 Debtor

APPROVED AND SO ORDERED
THIS ____ DAY OF _____, 2012:

_____
Robert N. Opel, II
United States Bankruptcy Judge

7

401157-1

Case 1:10-bk-01151-RNO   Doc 343   Filed 04/04/12   Entered 04/04/12 09:25:27   Desc
Main Document    Page 7 of 7